# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs August 13, 2024

## STATE OF TENNESSEE v. CEDRIC ANTON TAYLOR

**Appeal from the Criminal Court for Davidson County**
**No. 2018-B-914     Cheryl A. Blackburn, Judge**

_____

### No. M2024-00192-CCA-R3-CD

_____

Defendant, Cedric Taylor, was indicted for possession with intent to deliver 26 grams or more of cocaine (count one), possession with intent to deliver between one half ounce and ten pounds of marijuana (count two), and resisting arrest (count three). He entered an open guilty plea as charged in counts one and three, and the State agreed to nolle prosequi count two. The trial court imposed concurrent sentences of fourteen years for count one and six months for count two to be served in confinement as a Range II multiple offender.[1] On appeal, Defendant argues that the trial court abused its discretion denying his request for community corrections. Following our review of the entire record and the briefs of the parties, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which J. ROSS DYER, and KYLE A. HIXSON, JJ., joined.

Manuel B. Russ, Nashville, Tennessee (on appeal), and Jay Clifton, Nashville, Tennessee (at plea and sentencing hearings), for the appellant, Cedric Taylor.

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Coleman, Senior Assistant Attorney General; Glenn R. Funk, District Attorney General; and Vince Wyatt and Edward Ryan, Assistant District Attorneys General, for the appellee, State of Tennessee.

_____

[1] This is a delayed appeal granted by the trial court from Defendant's post-conviction petition alleging that trial counsel was ineffective for failing to file an appeal of his sentence. The trial court placed Defendant's other post-conviction claims in abeyance pending the delayed appeal.

# OPINION

## Factual and Procedural Background

The facts of this case, as set forth by the State at the guilty plea submission hearing, are as follows:

[O]n October 31st, 2017 at approximately 3:00 p.m., detectives with the Metro Nashville Police Department observed [Defendant's] vehicle traveling eastbound on I-40 going sixty-five in a fifty-five mile an hour zone.

Upon activating the emergency equipment, the Defendant pulled the vehicle to the side of the road. Immediately upon exiting the police vehicle, the detective could smell an obvious odor of marijuana. While speaking with the Defendant at the window of his vehicle, the odor of marijuana was very strong and was emitting from inside the Defendant's vehicle.

The Defendant was asked to step from the vehicle[] [a]t which time, he refused to exit the vehicle and rolled up the windows. After approximately thirty to forty-five minutes of speaking with the Defendant, a supervisor arrived at the scene, spoke with the Defendant who ended up exiting the vehicle.

During a search of the Defendant's vehicle, small white rocks were recovered under the driver's seat which field[-]tested positive for a cocaine base. Detectives attempted to search the glovebox and found it was locked. When asked for the keys to unlock the glovebox, the Defendant refused to produce the key. When detectives attempted to place the Defendant under arrest, he physically resisted their attempts to place handcuffs on his person.

After getting the keys to the glovebox, a further search of the Defendant's vehicle yielded approximately four hundred and fifty-six grams of marijuana, fifty-four grams of cocaine and thirteen grams of crack cocaine concealed inside the . . . glovebox.

*Sentencing Hearing*

The presentence report and certified copies of Defendant's prior convictions for possession with intent to sell, deliver, or manufacture less than .5 grams of cocaine (March 2, 2004, a Class C felony), possession of .5 grams of cocaine for resale (May 5, 2005, a Class B felony), simple possession of a Schedule II controlled substance (February 11, 2009, a Class E felony), and a federal conviction for felon in possession of a firearm (February 5, 2010, a Class E felony in the State of Tennessee) were entered as exhibits at

the sentencing hearing. The parties agreed that Defendant was a Range II multiple offender.

Lieutenant Brandon Tennant of the Metropolitan Nashville Police Department testified that he was assigned to the Specialized Investigations Division Gang Unit as a detective on October 31, 2017, when he and other officers conducted the traffic stop involving Defendant. He reiterated the facts set forth by the State at the guilty plea submission hearing. Additionally, Lieutenant Tennant testified that Defendant had $4,386.79 in various denominations on his person at the time of his arrest, which was somewhat consistent with drug trafficking. He further testified that Defendant told him that he did not have a key to the vehicle's glovebox; however, he knew Defendant's claim was false because another detective had seen Defendant lock it with a key before the search.

Defendant testified that he was released from incarceration in 2015, and he and his longtime girlfriend had started a successful mobile automobile detailing company in 2020 called Magnificent Touch Mobile Detailing and Pressure Washing. He had also volunteered with the Nashville Inner City Ministry, which helps youth in the community, for two and a half years. Defendant testified that after expenses, he cleared $600 to $700 per week from his detailing business, depending on the weather. He said that he was the father of five children, ages seventeen to twenty-four. The youngest child lived with the child's mother, and the other children were adults, and none of them lived with him. Defendant testified that he was also thinking about starting a business called Magnificent Transport and had already obtained the license and insurance for the company.

Defendant claimed that the cash found at the time of his arrest came from the settlement of a car accident claim. He said that he and his girlfriend had received a check for "like $6,800" a "couple of days or a day" before he was pulled over by Lieutenant Tennant. When asked why he asked for a supervisor during the stop, Defendant testified:

> I asked for a sergeant or a supervisor due to the fact because he said he pulled me over for speeding, and I thought to myself that was impossible due to traffic. You know, talking about the gravity, you know what I'm saying, of the road. So I thought it was impossible. So I was like come on now, you say you pace me going 65 in a 55. Well, if you're familiar with that area, that area got a lot of curves in it. Talking about its got a lot of down sides so with the gravity. So my thing is if you pace me, how did you pace me on an unlevel surface? And so that was my thing. And he was like well, [Defendant], he said you did this. I complied with the officer and I got out of the car. The officer said he smelled marijuana, but I told him there ain't no way, I just left the carwash.

Defendant testified that he was not aggressive toward the officers and agreed that he moved his hands from the back to the front when they attempted to handcuff him.

Defendant admitted that he was in possession of drugs at the time of his arrest but denied intent to deliver. When asked why he pled guilty to the charge of possessing drugs with the intent to deliver, Defendant replied: "I pl[ed] guilty at that time because y'all said if I didn't plead guilty, you know what I'm saying, my severity and my punishment would be worser." When asked by the trial court why he pled guilty, Defendant said: "I pled guilty due to the circumstances if I didn't cop out for this right here and I go to trial, each charge that I was convicted of, y'all talking about that would be consecutive. You know what I'm saying? That could be extensive long period of time me being away." When asked by the trial court if he wanted to withdraw his guilty plea, Defendant replied, "No."

The trial court noted that count one was a Class B felony subject to a sentencing range of twelve to twenty years as a Range II offender and that Defendant was not eligible for probation but could be eligible for community corrections. The State requested that Defendant be sentenced to fifteen years based on his "prior actions of being in the drug business, just getting released and everything else that entails [Defendant's] criminal history[.]" As to alternative sentencing, the State argued that Defendant had not "shown a propensity to need or qualify for any other alternative sentence" "due to the fact that he's had chances on probation and numerous convictions and was incarcerated and just got released, and then had a large quantity of drugs again[.]"

Defendant requested to be sentenced to the minimum of twelve years on community corrections because he had "already served his time for the vast mistakes he has made" and he had become a "legitimate business owner" and father involved in his children's lives. Defense counsel also asserted that Defendant was "willing to comply with any condition of probation, which I understand is that community corrections, any type of condition that community corrections might impose on him." Defense counsel further stated: "And this incident had happened approximately four years ago, and I think [Defendant] has now demonstrated that he is ready to get away from the life he had used to live and that he is ready to abide by the Court's probation conditions."

The trial court considered the factors listed in Tennessee Code Annotated section 40-35-102, the presentence report, the principles of sentencing, counsels' arguments as to sentencing alternatives, and the nature and characteristics of the criminal conduct. The trial court further said that it would consider enhancement and mitigating factors, the statistical information about sentencing practices, Defendant's statement, and the validated risk and needs assessment attached to the presentence report. The court noted that Defendant was in possession of a large amount of cocaine and pills and that he appeared to have received the money at the time of his arrest from people buying drugs rather than from a settlement.

The trial court found that Defendant had a previous history of criminal convictions or behavior in addition to those necessary to establish the range. *See* T.C.A. § 40-35-

114(1). The record reflects that Defendant had two Class E felony convictions and fourteen misdemeanor convictions that the trial court did not consider in setting his sentencing range. As for mitigating factors, the trial court considered Defendant's decision to plead guilty rather than proceed to trial. *See* T.C.A. § 40-35-113(13). The trial court set Defendant's sentence at fourteen years for count one and six months for count two.

Concerning alternative sentencing, the trial court said:

He clearly cannot be put on probation, and he doesn't really qualify for community corrections, either. And, usually, it's people who have these great either mental health or drug problems and all that. I just do not see that at all. The problem that [Defendant] has is that he has priors for this and continues to do it.

Near the conclusion of the hearing, Defendant asked the trial court why he could not receive a sentence of community corrections, and the court replied: "you don't meet the qualifications for community corrections."

**Analysis**

Defendant challenges the trial court's denial of alternative sentencing, specifically, community corrections. He contends that the trial court abused its discretion by concluding that he was ineligible for community corrections. The State contends that the trial court properly exercised its discretion when it ordered Defendant to serve his sentence in confinement.

The trial court is granted broad discretion to impose a sentence anywhere within the applicable range, regardless of the presence or absence of enhancement or mitigating factors, and the resulting sentence will be upheld "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *State v. Bise*, 380 S.W.3d 682, 709-10 (Tenn. 2012); *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012) (applying presumption of reasonableness and abuse of discretion standard of review to decisions involving alternative sentencing).

The sentencing statute provides certain guidelines on whether a defendant is eligible for alternative sentencing. For instance, a standard offender convicted of a Class C, D, or E felony, is considered a favorable candidate for alternative sentencing in the absence of evidence to the contrary. T.C.A. § 40-35-102(6)(A). To qualify for consideration for punishment in the community, an offender must meet all of the following criteria:

(A) Persons who, without this option, would be incarcerated in a correctional institution;

- 5 -

(B) Persons who are convicted of property-related or drug- or alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;

(C) Persons who are convicted of nonviolent felony offenses;

(D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;

(E) Persons who do not demonstrate a present or past pattern of behavior indicating violence; and

(F) Persons who do not demonstrate a pattern of committing violent offenses.

*Id.* § 40-36-106(a)(1) (2021).

An offender is not automatically entitled to community corrections upon meeting the minimum requirements for eligibility. *State v. Ball*, 973 S.W.2d 288, 294 (Tenn. Crim. App. 1998); *State v. Grigsby*, 957 S.W.2d 541, 546-47 (Tenn. Crim. App. 1997). Rather, once the trial court determines that the defendant is eligible for a community corrections sentence, the trial court then applies the sentencing considerations set forth in Tennessee Code Annotated section 40-35-103, as well as the general sentencing guidelines, to determine whether the defendant is entitled to a community corrections sentence. *Grigsby*, 957 S.W.2d at 546-47.

Pursuant to Tennessee Code Annotated section 40-35-103, the trial court should look to the following considerations to determine whether a sentence of confinement is appropriate:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1)(A)-(C).

We find no error in the trial court's sentencing determinations. The record reflects that the trial court properly considered the enhancement and mitigating factors, imposed a sentence within the applicable range for the offense, and made findings of fact in support of both the length and manner of service of the sentence imposed. Defendant argues that the trial court's decision was improper because it "used the incorrect legal standard when it declared, erroneously," that Defendant was ineligible for community corrections and erroneously stated that "the program was reserved for offenders with either mental health or drug problems." However, the record clearly reflects that the trial court based its denial of community corrections on Defendant's prior criminal record.

We conclude that because Defendant is a Range II multiple offender, he is not a favorable candidate for alternative sentencing, and the presumption that he was eligible for community corrections was rebuttable based on his extensive criminal history. *See* T.C.A. § 40-35-102(6)(A). Furthermore, as pointed out by the State, subsection (6)(A) of Tennessee Code Annotated 40-35-102 states that "a defendant who is being sentenced for a third or subsequent felony conviction involving separate periods of incarceration or supervision shall not be considered a favorable candidate for alternative sentencing." In this case, each of Defendant's four prior felony convictions involved separate sentences of confinement and supervised release. Additionally, Defendant received an alternative sentence of five years' probation, including the first six months on "intensive" probation for his 2004 conviction for possession with intent to sell, deliver, or manufacture less than .5 grams of cocaine; an alternative sentence of eight years on probation, again beginning with "intensive probation," for his 2005 conviction for possession of .5 grams or more of cocaine for resale; and two years of supervised release for his 2010 federal conviction. Despite being granted alternative sentences in the past, Defendant continued to commit crimes. His possession of 456 grams of marijuana, fifty-four grams of cocaine, thirteen grams of crack cocaine, and $4,386.79 in cash rebuts the presumption that Defendant was a favorable candidate for community corrections.

We conclude that the trial court did not abuse its discretion in finding that Defendant's prior criminal history greatly outweighed any factors favoring a sentence other than confinement. We affirm the trial court's denial of alternative sentencing. Defendant is not entitled to relief.

**Conclusion**

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
JILL BARTEE AYERS, JUDGE